IN THE CIRCUIT COURT FOR THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

TIMOTHY JOLLOFF,

    Plaintiff,

vs.                                                      Case No.

REGIONAL ENTERPRISES, LLC, a/k/a
REGIONAL ENTERPRISES OF MS, LLC,
d/b/a REGIONAL HOMES OF FT. MYERS,

    Defendant.

_____/

## COMPLAINT

Plaintiff, TIMOTHY JOLLOFF, sues Defendant, REGIONAL ENTERPRISES, LLC, a/k/a. REGIONAL ENTERPRISES OF MS, LLC d/b/a REGIONAL HOMES OF FT. MYERS and alleges:

### GENERAL ALLEGATIONS

1. This is an action for breach of contract and, alternatively, unjust enrichment. Plaintiff alleges that Defendant, a dealer and retailer of modular and mobile homes in Southwest Florida, breached his written Commission Agreement by failing and refusing to pay commissions earned during his employment as General Manager.

2. The damages sought in this action are greater than $50,000.00, exclusive of costs, interest, and attorney's fees.

3. At all times material, Plaintiff Timothy Jolloff ("Jolloff" or "Plaintiff"), resided in Lee County, Florida.

4. Defendant Regional Enterprises, LLC is a Mississippi corporation registered to do business in Florida. According to the Florida Division of Corporations, the company is alternatively known as Regional Enterprises of MS, LLC, and identifies its

principal place of business as 409 Saint John's Road, Bonifay, FL 32425. In Southwest Florida, Regional Enterprises, LLC also does business as Regional Homes of Ft. Myers, and operates a dealership and retail location at 17595 S. Tamiami Trail, Ste. 265D, Fort Myers, FL 33908. (Collectively referred to as "Regional" or "Defendant").

5. At all times material, Defendant engaged in substantial business in Lee County, Florida by operating a dealership and retail location where it solicits and sells modular and mobile homes to customers located in Southwest Florida including Lee, Charlotte, and surrounding counties in the 20th Judicial Circuit.

6. The cause of action accrued in Lee County, Florida. Plaintiff's contract was entered into and performed in Lee County. Defendant breached the contract in Lee County by terminating Plaintiff to preclude his performance, failing and refusing to pay commissions due, and repudiating its contractual obligations.

7. All conditions precedent to bringing this action have been performed or have occurred.

## STATEMENT OF FACTS

8. Regional is a privately owned retailer of manufactured, modular, and mobile housing in the Southeastern United States. As part of its model, Regional locates a geographic area with a target market, then opens a dealership and begins a marketing campaign to solicit, sell, and finance its manufactured, modular, and mobile homes.

9. Regional holds itself out as the largest privately owned mobile and manufactured housing dealership in the Southeastern United States.

10. Following Hurricane Ian, Regional decided to open a dealership in Fort Myers, Florida to market and sell modular and manufactured homes to customers in Southwest Florida whose homes were damaged or destroyed by the hurricane.

11. Regional sought out and solicited Jolloff, who resided in Southwest Florida and was working in the industry, to be its General Manager, due to his extensive experience in the operations and retail sales of manufactured, modular, and mobile homes.

12. On November 4, 2022, Regional and Jolloff entered a written contract, entitled Commission Agreement ("Agreement"), to employ Jolloff as its General Manager. (**Commission Agreement, Exhibit 1**).

13. As compensation, Regional agreed to pay Jolloff a commission according to the following "Commission Payment Schedule" attached as Exhibit A to the Commission Agreement:

    1. For the first 90 days, Commission shall equal the greater of:
        a. $30,000 per month, OR
        b. The Net Profit commission outlined in #2 below
    2. After the first 90 days, the Net Profit Commission shall equal at the sole discretion of Company either:
        a. 17.5% of the Net Commissionable Profit, as the company presents for all other general managers of the Company, of the Fort Myers, FL location + 17.5% of the Net Commissionable Profit of the Punta Gorda, FL location, OR
        b. 35% of the Net Commissionable Profit, as the company presents for all other general managers of the Company, of the Fort Myers, FL location

14. Following acceptance, Jolloff performed as General Manager, which resulted in a substantial number of customer sales of modular or mobile homes from Regional.

15. From November 4, 2022, through January 7, 2023, while Jolloff was General Manager, the dealership sold 52 mobile homes by procuring sales orders for the following customers:

   1. Charles Dunbar
   2. Dave Sutton
   3. Randy Rogers
   4. Candy Anderson
   5. Mary Ann Iacona
   6. Eva Mascoli
   7. Dave Prince
   8. Bill Preston
   9. Carol Syfert
   10. Mike Pehl
   11. Gary Carter
   12. Vicki Koledcki
   13. Jackie Forbes
   14. Cynthia Hynote
   15. Dave Brown
   16. Diane Ryan
   17. Rob Henne
   18. Shirley Evans
   19. Robin Trevison
   20. Bill Michaels
   21. Joanne
   22. Butch Champers
   23. Newton
   24. Dave Yurgelitis
   25. Martha Shaw
   26. Dale Martin
   27. Kevin Brown
   28. Carol Varney
   29. Jay Kline
   30. Patti And Parents
   31. Tom Mazza
   32. Marlene Phoeski
   33. Mary Ellen Capoccino
   34. Michele Haskins
   35. Sheryl Larkins
   36. Rod Griffis
   37. Peggy Proto
   38. Paul Wock
   39. Diane Barber
   40. Carl Denzler
   41. Cory Shilling
   42. Glen Mcleod
   43. Greg Lazarev
   44. Harlan Woolan
   45. Linda Beesley
   46. Rhonda Puzey
   47. Richard Wescom
   48. Van Dyke
   49. Carol Ferns
   50. Richard Colling
   51. Richard Lux
   52. Bruce Bashaw

16. Upon information and belief and subject to discovery, Regional's gross sales attributable to the dealership totaled approximately $10,400,000. The estimated gross profit from each sale is $45,000 per home, or $2,247,000 total.

17. Per the terms of the Commission Agreement, Regional owed Plaintiff commission compensation of approximately $590,000.

18. On January 7, 2023, Regional verbally terminated Jolloff.

19. Section 10 of the Commission Agreement, entitled Term/Termination, deals with commission payments due upon termination and provides:

   This Agreement may be terminated by either party by written notice. If either party shall so terminate this Agreement, Jolloff shall be entitled to Commission Payments up to the termination date of such termination less any loans/draws the Company has made to Jolloff, unless Jolloff is in violation of this Agreement. If Jolloff is in violation of this Agreement, Company may terminate employment without notice and with

compensation to Jolloff only to the date of such termination less any loans/draws made by Company to Jolloff . . . .

20. Regional does not allege that Jolloff violated the Agreement. Thus, under the Agreement, Jolloff is due to be paid Commission Payments up to the termination date, less any loans/draws.

21. On January 19, 2023, Regional terminated Plaintiff in writing but did not contend any breach of the Agreement by Plaintiff. Instead, Regional refused to pay commissions under the Agreement.

## COUNT I – BREACH OF CONTRACT

22. Plaintiff repeats and realleges paragraphs 1 through 21 as if fully set forth here.

23. As set forth above, Plaintiff and Defendant entered into a valid and enforceable written Agreement. (Exhibit 1).

24. Plaintiff performed under the terms of the Agreement or his performance was excused because Defendant precluded performance.

25. Upon termination, Defendant was obligated to pay commissions earned to the date of termination unless Plaintiff was terminated for violating the Agreement.

26. Defendant breached the agreement first by terminating Plaintiff verbally, then by repudiating its obligation to pay commissions based on its own self-serving interpretation that is not consistent with the terms of the Agreement or applicable law governing the construction of contracts.

27. As a result of Defendant's breach, Plaintiff suffered compensatory damages in the form of unpaid commissions due and owing to the date of termination under the Agreement.

**WHEREFORE**, Plaintiff demands judgment against Defendant for breach of contract and for unpaid commissions and attorney's fees and costs under Fla. Stat. § 448.08, or alternatively treble damages and attorney's fees and costs under MS Code § 75-87-7 (2020).

## COUNT II – UNJUST ENRICHMENT
## (IN THE ALTERNATIVE)

28. Plaintiff realleges paragraphs 1 through 21 as if fully set forth herein.

29. Plaintiff conferred a substantial benefit upon Defendant; specifically, the work performed by Plaintiff generated substantial revenues and profits in the sale of modular, manufactured, and mobile homes of Regional.

30. Defendant Regional would not have realized the significant sales and profits without the efforts of Plaintiff.

31. Defendant had complete knowledge of and appreciated the benefit conferred by the Plaintiff. Defendant knowingly accepted the benefit conferred by Plaintiff and the resulting substantial sales orders.

32. The circumstances are such that it would be unjust and inequitable for Defendant to retain the benefit conferred without paying any commission to the Plaintiff.

33. Defendant owes Plaintiff money due for the benefit of procuring sales orders for Defendant.

34. Defendant's retention of the benefit is inequitable unless it pays Plaintiff the value of the benefit conferred.

**WHEREFORE**, Plaintiff demands judgment against Defendant for unpaid commissions and attorney's fees and costs under Fla. Stat. § 448.08, or alternatively treble damages and attorney's fees and costs under MS Code § 75-87-7 (2020).

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

Dated: March 28, 2023

                Respectfully submitted,

                /s/ Jason L. Gunter
                Jason L. Gunter
                Fla. Bar No. 0134694
                Email: Jason@GunterFirm.com
                Conor P. Foley
                Fla. Bar No. 111977
                Email: Conor@GunterFirm.com
                Adam C.R. Heisner
                Fla. Bar No. 124727
                Email: Adam@GunterFirm.com

                **GUNTERFIRM**
                1514 Broadway, Suite 101
                Fort Myers, FL 33901
                Tel: 239.334.7017

# EXHIBIT 1

## COMMISSION AGREEMENT

This Commission Agreement (this "Agreement") is made effective as of November 4, 2022, by and between Tim Jolloff (hereinafter "Jolloff") and Regional Enterprises, LLC (hereinafter "Company"). The Company is engaged in the business of selling mobile homes at various sites operated by Company, hereinafter referred to as "Lot Locations" and various non-Lot Locations. Company desire to employ Jolloff and Jolloff is willing to be employed by Company.

Therefore, the parties agree as follows:

1. EMPLOYMENT. Company shall employ Jolloff as a commission based general manager under the supervision, advice, and direction of a regional manager, or other position as Company sees fit, which Company may appoint from time to time at its sole discretion hereinafter referred to as "Supervisor".
2. BEST EFFORTS OF EMPLOYEE. Jolloff agrees to perform faithfully, industriously, and to the best of Jolloff's ability, experience, and talents, all of the duties that may be required or assigned by the express and implicit term of this Agreement, Supervisor, or Company, to the reasonable satisfaction of Supervisor or Company.
3. OWNERSHIP OF SOCIAL MEDIA CONTACTS AND DIGITAL RECORDS. Any social media contacts, including "followers" or "friends," that are acquired through accounts (including, but not limited to email addresses, blogs, Twitter, Facebook, YouTube, or other social media networks) used or created on behalf of the Company are the property of the Company. All digital records including but not limited to emails, scans, etc. used or created on behalf of the Company are the property of the Company and may be monitored or audited by the Company at any time.
4. COMPENSATION OF EMPLOYEE. As compensation for the services provided by Jolloff under this Agreement, Company WILL NOT pay an annual salary.
5. COMMISSION PAYMENTS. In addition to the payments under the preceding paragraph, Company will make commission payments to Jolloff based on the following schedule which may be changed from time to time at Company's sole discretion:

See Exhibit A
exhibits are incorporated herein by reference
In accordance with US Code Title 25 Subtitle C Chapter 25 (SS) 3508, Jolloff acknowledges and represents that Jolloff will not be treated as an employee with respect to such services for Federal and state tax purposes.

_____
initial

6. COMMISSION ASSIGNMENT. Jolloff may assign his or her Commission Payments to a third party by written notice to Company. Jolloff may revoke said assignment from time to time by written notice to Company. Jolloff may make this assignment and revocation as often as he/she choses; however, not more than once every ninety days. Previous, current, and future assignees are hereinafter referred to as "Assignee". Company shall not employ or hire said Assignee. Company shall not be liable for any

Commission Payments to Assignee due to Company's delay in recognizing notices of assignment or revocation of assignment.

7. EXPENSE REIMBURSEMENT. Company WILL NOT reimburse Jolloff for "out-of-pocket" expenses incurred by Jolloff in connection with sales unless approved by Supervisor.

8. CONFIDENTIALITY. Jolloff recognizes that Company has and will have information regarding the mobile home industry (including but not limited to sales, financing, insurance, mobile home parks, rentals, etc.) and other vital information items (collectively, "Information") which are valuable special and unique assets of Company, Jolloff agrees that Jolloff will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of Company. Jolloff will protect the Information and treat it as strictly confidential. A violation by Jolloff of this paragraph shall be a material violation of this Agreement and will justify legal and or equitable relief which may include but not be limited to Jolloff's forfeiture of all outstanding Commission Payments. The preceding sentence shall not prohibit Company from pursing other remedies including a claim for losses and damages or an injunction to restrain Jolloff from disclosing, in whole or in part, such Information. This paragraph shall remain in full force and effect for not less than five years after the termination of Jolloff's employment.

9. EMPLOYEE'S INABILITY TO CONTRACT FOR EMPLOYER. Jolloff shall not have the right to enter into any contracts or commitments for or on behalf of Company without first obtaining the express written consent of the Company.

10. TERM/TERMINATION. Jolloff's employment under this Agreement shall be for an unspecified term on an "at will" basis. This Agreement may be terminated by either party by written notice. If either party shall so terminate this Agreement, Jolloff shall be entitled to Commission Payments up to the termination date of such termination less any loans/draws the Company has made to Jolloff, unless Jolloff is in violation of this Agreement. If Jolloff is in violation of this Agreement, Company may terminate employment without notice and with compensation to Jolloff only to the date of such termination less any loans/draws made by Company to Jolloff except for Company's rights under the CONFIDENTIALITY paragraph herein. The compensation paid under this Agreement shall be Jolloff's exclusive remedy against Company, its officers, employees, owners, or affiliates.

11. TERMINATION FOR DISABILITY. Company shall have the option to terminate this Agreement, if Jolloff becomes permanently disabled and is no longer able to perform the essential functions of the position with reasonable accommodation. Company shall exercise this option by giving Jolloff written notice.

12. COMPLIANCE WITH EMPLOYER'S RULES. Jolloff agrees to comply with all the rules and regulations of Company.

13. RETURN OF PROPERTY. Upon termination of this Agreement, Jolloff shall promptly deliver to Company all property which is Company's property or related to Company's business (including but not limited to keys, records, notes, data, memoranda, models, and equipment) that is in Jolloff's possession or under Jolloff's control.

14. NON-SOLICITATION. During the continuance of this Agreement or for an additional period of one year from the date of Termination, the Jolloff will not divert or attempt to divert from the Employer any business the Employer had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of the Employment. Jolloff agrees not to hire or solicit any of Company's employees or contractors for a period of one (1) year from the end of Jolloff's employment as a commission based general manager.

Jolloff: x_____

<sub>Jolloff's signature specifically accepting Paragraph 14, Non-Solicitation</sub>

15. NOTICES. All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or on the third day after being deposited in the US mail, postage paid, addressed as follows:

   Employer: Regional Enterprises, LLC, PO Box 5989, Brandon, MS 39047

   Employee:_____

Such address may be changed from time to time by either party by providing written notice in the manner set forth above.

16. ENTIRE AGREEEMENT. This Agreement contains the entire agreement of the parties and there are no other promises or condition in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties.
17. AMENDMENT. This Agreement may be modified or amended only in writing.
18. SEVERABILITY. If any provision(s) of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provision(s) shall continue to be valid and enforceable.
19. WAIVER OF CONTRACTUAL RIGHT. The failure of either party to enforce any provision(s) of this Agreement shall NOT be constructed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.
20. APPLICABLE LAW. This Agreement shall be governed by the laws of the State of Mississippi.
21. SIGNATORIES. This Agreement shall be signed by Neil Godfrey on behalf of Regional Enterprises, LLC in his capacity as COO and by Tim Jolloff in an individual capacity. This Agreement is effective as of the date first above written.

**[SIGNATURES ON FOLLOWING PAGE]**

## COMMISSION AGREEMENT SIGNATURE PAGE

EMPLOYER:
Regional Enterprises, LLC
a Mississippi limited liability company

Date:_____     _____
                               By its COO: Neil Godfrey

                               Agreed to and Accepted
                               Employee: Tim Jolloff

Date:_____     _____

## Exhibit A

### Commission Payments Schedule:

1. For the first 90 days, Commission shall equal the greater of:
    a. $30,000 per month, OR
    b. The Net Profit commission outlined in #2 below
2. After the first 90 days, the Net Profit Commission shall equal at the sole discretion of Company either:
    a. 17.5% of the Net Commissionable Profit, as the company presents for all other general managers of the Company, of the Fort Myers, FL location + 17.5% of the Net Commissionable Profit of the Punta Gorda, FL location, OR
    b. 35% of the Net Commissionable Profit, as the company presents for all other general managers of the Company, of the Fort Myers, FL location

For the purposes of this Agreement Company will start with Payment Schedule Section 2.a following Payment Schedule Section 1. At Company's sole discretion, Company may notify Jolloff that it is changing Jolloff's Commission Payment Schedule to 2.b.

\*\*Details of Net Commissionable Profit may be accessed through the Company's computer system.